ALBERT B. HARRIS

*v.*

MICHAEL C. McDONALD.

*Opinion filed December 18, 1901.*

1. LEASES—*equity may set aside guaranty of lease for gambling house.*
Under sections 127 and 135 of the Criminal Code, making it a penal
offense to knowingly rent property for a gambling house and pro-
viding that all agreements executed contrary to the provisions of
the act may be set aside in equity, equity has power to set aside a
contract of guaranty endorsed on such a lease, and also any judg-
ment recovered on such guaranty.

2. ACTIONS AND DEFENSES—*what not a defense to a bill to set aside
guaranty of lease for a gambling house.* It is not a sufficient defense
to a bill to set aside complainant's guaranty of a gambling house
lease, and the judgment recovered thereon, to prove that complain-
ant appeared and defended the suit at law in which such judgment
was rendered, where it appears that the illegality of the contract,
under the statute relied upon in the bill for relief, was not set up
or adjudicated in the suit at law.

3. EQUITY—*jurisdiction of equity to set aside contracts in violation of
gambling laws.* Contracts made in violation of section 127 of the
Criminal Code are void because in violation of law and against
public policy, and equity has jurisdiction to set them aside at the
suit of any party interested, whether such contracts are expressly
declared void by sections 131 and 135 or not.

*Harris* v. *McDonald*, 93 Ill. App. 191, affirmed.

APPEAL from the Branch Appellate Court for the First
District;—heard in that court on appeal from the Circuit
Court of Cook county; the Hon. ELBRIDGE HANECY, Judge,
presiding.

The appellee filed his bill in equity in the circuit court
of Cook county to set aside a certain judgment which had
been obtained against him on his guaranty for the pay-
ment of rent on a lease by appellant to one Hogan, and
which had been affirmed by the Appellate Court, and to
set aside and cancel a certain certificate of sale of appel-
lee's land, which had been sold under a *fieri facias* execu-
tion issued on said judgment and purchased by appellant,

and for an injunction restraining appellant from bringing any more suits on said guaranty, and for other relief. The grounds alleged in the bill were, that the lease was made from appellant to Hogan of premises to be used as a gambling house, and that they were so used with the knowledge and consent of appellant, the lessor.

Upon the final hearing upon the evidence the court entered a decree finding that all the material allegations of the bill were true; that Hogan and Harris, without the knowledge of McDonald, entered into an agreement that although the lease for premises No. 336 State street provided that the same should be used for a saloon, restaurant and European hotel, it was nevertheless understood that the premises should be used for carrying on a public gambling business, and that, in fact, they were used during the whole period of occupancy by said Hogan under said lease from Harris dated February 17, 1891, and providing for the possession of premises No. 336 South State street for a term, etc., and that the premises in question, during the entire period of occupancy from May 1, 1891, to May 1, 1896, at which time said Hogan abandoned and gave up possession, were in open, public and notorious use as a gambling house, and that therein were played divers games of chance, called faro, roulette, hazard, etc., with dice, cards, wheels and the like; that on divers occasions Harris was present in the gambling room or rooms on said premises during the existence of said lease and while the premises were in the occupancy of said Hogan, and saw and had opportunity to see gambling by various devices being carried on openly, with players surrounding the table, and money, checks or chips in sight, and being wagered, won and lost during the progress of the gambling games; that said McDonald had no knowledge whatever of the existence of the agreement in question between Hogan and Harris providing for the carrying on of gambling upon the premises, and did not become acquainted with the existence of said agreement

until after the decision of the case of *McDonald* v. *Harris*, in the Appellate Court; that McDonald signed his name to the guaranty on the lease in June or July, 1891, and that neither before nor at the time, nor after said time, did he receive from Harris, or any one, any consideration whatever for the making and execution of said guaranty, and said guaranty was wholly without consideration; that a writ of *fi. fa.* issued from the superior court in the suit of Harris against McDonald on a judgment on the guaranty of said lease, the judgment being affirmed by the Appellate Court after a *remittitur* had been entered by said Harris, and that under the direction of said Harris, Pease, sheriff, levied said *fi. fa.* upon lot 55, etc.; that said real estate was sold by said sheriff to satisfy said judgment for the sum of $500, and said sheriff issued a certificate of sale to Harris, who purchased said land at said sale; that said Harris was about to commence another suit for the purpose of collecting an unpaid balance, etc.; that the court further found and concluded that the agreement between said Hogan and Harris referred to, was contrary to public policy and in violation of section 135 of the Criminal Code of the State of Illinois.

The decree then recites that it was ordered, adjudged and decreed that the judgment obtained in the superior court, etc., in the case of Harris, plaintiff, against McDonald, defendant, and the judgment in the same case in the Appellate Court for the First District, be and the same were thereby set aside, vacated and held for naught because of the aforesaid illegal agreement between the said Harris and the said Hogan, and that the certificate of sale issued by Pease, sheriff, etc., to said Harris, conveying said real estate, etc., be surrendered up by said Harris for cancellation, etc.; that the said Harris, his agents, etc., be and the same were thereby restrained from any further proceedings by the issuance of writs of *fi. fa.*, or otherwise, under a judgment obtained in the suit of *Harris* v. *McDonald*, Gen. No. 165,004 in the superior

court, etc., and Gen. No. 7922 in the Appellate Court, etc., and that said Harris be and thereby was restrained by the order, etc., of said court from beginning any more suits for the collection of any sums of money claimed to be due or to become due under the guaranty of said Mc-Donald on the lease signed by Hogan and Harris, covering the premises No. 336 South State street, etc. On appeal the Branch Appellate Court affirmed the decree, and the defendant below took this further appeal.

COOKE & UPTON, for appellant.

EDWARD MAHER, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

Counsel for the appellant contend that the appellee, as a guarantor, is not entitled to relief in equity; that the statute does not apply to guarantors, and cite *Lucas* v. *Nichols*, 66 Ill. 41, in support of the proposition. That case does not so decide.

Section 127 of the Criminal Code (Hurd's Stat. 1899, p. 590,) provides: "Whoever keeps a common gaming house, or in any building, booth, yard, garden, boat or float, by him or his agent used and occupied, procures or permits any persons to frequent or to come together to play for money or other valuable thing, at any game, or keeps or suffers to be kept any tables or other apparatus, for the purpose of playing at any game or sport, for money or any other valuable thing, or knowingly rents any such place for such purposes, shall, upon conviction, for the first offense be fined not less than $100, and for the second offense be fined not less than $500, and be confined in the county jail not less than six months, and for the third offense shall be fined not less than $500, and be imprisoned in the penitentiary not less than two years nor more than five years." And section 135 is as follows: "All judgments, mortgages, assurances, bonds, notes,

bills, specialties, promises, covenants, agreements, and other acts, deeds, securities, or conveyances, given, granted, drawn or executed, contrary to the provisions of this act, may be set aside and vacated by any court of equity, upon bill filed for that purpose, by the person so granting, giving, entering into, or executing the same, or by his executors or administrators, or by any creditor, heir, devisee, purchaser or other person interested therein; or if a judgment, the same may be set aside on motion of any person aforesaid, on due notice thereof given."

The evidence established the fact that the premises leased were kept by the lessee, Hogan, as a common gaming house; that persons frequented the place and came together there to play at games for money, and that the appellant, Harris, knowingly made the lease and rented the premises for such purposes; and it follows that if the contract of guaranty of the appellee, McDonald, and the judgment thereon rendered against him, fall within the things enumerated in section 135 as "all judgments, mortgages, assurances, bonds, notes, bills, specialties, promises, covenants, agreements, and other acts, deeds, securities, or conveyances given, granted, drawn or executed, contrary to the provisions of this act," (the act in question,) such guaranty and judgment may be set aside in equity. It is clear that section 127 makes it a penal offense for any person to keep a common gaming house, or to procure or permit persons to frequent or come together in any building kept or occupied by him, to play for money or other valuable thing, at any game, or to knowingly rent any such place for such purposes. It cannot be doubted, then, that the lease, and the covenant therein to pay rent, were contrary to the provisions of said section 127, and that it and the judgment for such rent would, on sufficient proof, be set aside in equity, under section 135. If the lease to Hogan and his covenant to pay rent were contrary to the provisions of section 127, the contract of

guaranty of such payment endorsed on such lease and executed by appellee, McDonald, being an agreement, would be equally so, and subject, as would any judgment given thereon, to be set aside by any person interested therein. And this would seem to be so whether such lease, guaranty and judgment are considered as embraced in the class of gaming contracts enumerated in and declared to be void by section 131 or not. It is sufficient to give equity jurisdiction under section 135, on application of any person interested, that the contracts are contrary to the provisions of the statute. It being established that they are contrary to the provisions of section 127, they are void because in violation of law and against public policy, independently of section 131, which does not mention the acts denounced by section 127. A further penal provision for leasing a building to be used for gambling purposes is found in section 133, making the property so leased liable for any judgment obtained under section 132 by any person who loses money or other valuable thing therein at gaming. But this case does not involve said two last mentioned sections.

It is not a sufficient defense to the bill to prove that the complainant appeared and defended in the suit at law in which the judgment was rendered, it appearing that the illegality of the contract, under the statute alleged in the bill as a ground for relief, was not set up or adjudicated in the action at law. (*Mallett* v. *Butcher*, 41 Ill. 382; *Lucas* v. *Nichols*, 66 id. 41; *West* v. *Carter*, 129 id. 249.) In these cases it was held that this statute takes cases of this character out of the general rule that a defense must be made at law if action is brought on the gaming contract. In the case at bar it was found by the decree that appellee had no knowledge, before the judgment sought to be set aside was rendered, that appellant had knowingly leased the premises to Hogan to be used for gambling purposes, and, of course, that defense was not made in the suit at law.

The decree of the circuit court and the judgment of the Appellate Court affirming it are in accord with the decisions of this court, and said judgment must be affirmed.

*Judgment affirmed.*